UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSSELL TINSLEY, | Civil Action No. 16-4078 (MCA) |
| Petitioner, | |
| v. | OPINION |
| SHERRY YATES, | |
| Respondent. | |

## I.    INTRODUCTION

This matter has been opened to the Court by Petitioner's ("Petitioner" or "R.T.") filing of

a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  For the reasons

explained in this Opinion, the Court denies the Petition and denies a certificate of appealability.

## II.   FACTUAL OVERVIEW AND PROCEDURAL HISTORY[1]

Petitioner is currently civilly committed to the Special Treatment Unit ("STU") in

Avenel, New Jersey, pursuant to New Jersey's Sexually Violent Predator Act ("SVPA"),

N.J.S.A. 30:4–27.24 et seq.

On May 3, 2010, the State filed a petition for civil commitment pursuant to the SVPA,

supported by clinical certificates of two psychiatrists identifying R.T. as a sexually violent

predator ("SVP").  At the time the State filed the petition for civil commitment, R.T. was serving

a four-year sentence in New Jersey for a 2008 conviction for third degree theft, in violation of

---

[1] The factual overview is taken from the Appellate Division's decision affirming Petitioner's
civil commitment, *see In re Civil Commitment of R.T.*, 2016 WL 674215, at *1–4 (N.J. Super.
App. Div. Feb. 19, 2016), and the record provided by Petitioner, *see* ECF No. 3, and
Respondents.  *See* ECF No. 14 and related exhibits.

N.J.S.A. 2C:20-2.[2] Because the theft conviction is not an enumerated offense under N.J.S.A. 30:4-17.26(a), the State of New Jersey relied upon Pennsylvania and California convictions for sexual offenses.

On May 10, 2010, the trial court entered an order temporarily committing R.T. to the New Jersey Special Treatment Unit ("STU"), and scheduled a date for the final hearing. After a number of delays, the court held a final hearing on December 18, 2013, at which R.T. appeared. The State relied on expert reports and testimony from Dean DeCrisce, M.D. and Nicole Paolillo, Psy.D.. R.T. testified but did not present an expert. R.T. Following the close of evidence, Judge Philip Freedman issued an oral decision committing R.T. to the STU.

On appeal, Petitioner argued "that the court lacked jurisdiction to order his commitment, the State failed to sustain its burden of proof, he was denied a timely hearing, and he should have been assigned new counsel." *See In re Civil Commitment of R.T.*, 2016 WL 674215, at *1, 4-7 (N.J. Super. App. Div. Feb. 19, 2016). The Appellate Division rejected these arguments and affirmed Petitioner's civil commitment. The New Jersey Supreme Court denied certification. (Exhibit LL.)

Petitioner submitted the instant habeas petition for filing on July 1, 2016. (ECF No. 1, Pet. at 17.). The Petition raises four grounds for relief. Ground One of the Petition raises the issues he raised to the Appellate Division on direct appeal. Ground Two of the Petition asserts that the Appellate Division and New Jersey Supreme Court improperly denied his motion to supplement the record with an expert report. Grounds Three and Four assert that Petitioner should be released from confinement because the state did not have enough evidence to commit

---

[2] The New Jersey conviction arose from 1997 charges for car theft, receiving stolen property and eluding. Petitioner's criminal history and sexually-related offenses are described in more detail later in the Opinion.

him.[3] Petitioner subsequently filed a brief in support of the Petition (ECF No. 3),[4] and the Court provided Petitioner with a notice pursuant to *Mason v. Myers*, 208 F.3d 414 (3d Cir. 2000). Petitioner also submitted motions for the appointment of counsel (ECF Nos. 6-8), and on March 31, 2017, the Court denied without prejudice the motion for counsel,[5] and directed Respondents to answer the Petition. (ECF No. 10.) On May 15, 2017, Respondents filed their answer, and Petitioner filed his reply on May 22, 2017.[6] (ECF Nos. 14-15.)

### III.    STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73

---

[3] Grounds Three and Four appear to reassert the sufficiency of the evidence claim raised in Ground One and seek release and/or transfer to Pennsylvania as a remedy.

[4] The brief in support of the Petition appears to be Petitioner's brief submitted in connection with his appeal before the Appellate Division. (*See* ECF No. 3; ECF No. 14-16, Exhibit M.)

[5] The Court subsequently denied without prejudice Petitioner's second request for counsel and his motion for reconsideration. (ECF Nos. 12, 22.)

[6] On November 30, 2018, after briefing in this matter was complete, Charles Harry Landesman, Esquire, entered an appearance on behalf of Petitioner. On January 9, 2019, Mr. Landesman submitted a letter to the Court requesting a status update. (ECF Nos. 29-30.) On February 27, 2019, Petitioner wrote to the Court asking to have Mr. Landesman removed as counsel, as he wishes to proceed pro se in this matter. (ECF No. 31.)

(2010). Where a claim has been adjudicated on the merits by the state courts, the district court

shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d)(1) (2). Federal law is clearly established for the purposes of the statute

where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the

United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When

reviewing state criminal convictions on collateral review, federal judges are required to afford

state courts due respect by overturning their decisions only when there could be no reasonable

dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual

determination of the state courts, "a determination of a factual issue made by a State court shall

be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption

of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV.   ANALYSIS

### a. Overview of SVPA

The New Jersey SVPA provides a means for the state to civilly commit individuals who

have been convicted of certain classes of sexually violent offenses and therefore qualify as

"sexually violent predators." N.J.S.A. 30:4–27.26. Under the act, a person qualifies as an SVP

where he

> has been convicted, adjudicated delinquent or found not guilty by
> reason of insanity for commission of a sexually violent offense, or
> has been charged with a sexually violent offense but found to be
> incompetent to stand trial, and suffers from a mental abnormality
> or personality disorder that makes the person likely to engage in

> acts of sexual violence if not confined in a secure facility for
> control, care and treatment.

N.J.S.A. 30:4–27.26(b).

When it appears that a person may meet the criteria of an SVP, an "agency with jurisdiction," such as the New Jersey Department of Corrections, provides notice to the New Jersey Attorney General at least ninety days before the anticipated release of this individual. *Greenfield v. Dep't of Corr.*, 2011 WL 3203730, at *6 (D.N.J. July 27, 2011) (citing N.J. Stat. Ann. §§ 30:4–27.26; 3:4–27.27(a)(1) ). Upon receiving such notice, the Attorney General, if he concludes that the interests of public safety warrant involuntary civil commitment of the individual involved, may bring an action for commitment under the SVPA. *Id.* Under the statute, such an involuntary commitment procedure may follow from the release of an offender from jail so long as the offender suffers from a requisite mental abnormality or personality disorder and the offender is therefore likely to engage in acts of sexual violence if not confined in a secure treatment facility. N.J. Stat. Ann. §§ 30:4–27.26; 30:4–27.28; 30:4–27.32(a).

To initiate the commitment of an individual being released from imprisonment, the Attorney General must file a petition for commitment, supported by "two clinical certifications, one of which must be from a psychiatrist who has examined the individual no more than three days before the submission of the petition for commitment." *Greenfield*, 2011 WL 3203730 at *6 (citing N.J. Stat. Ann. §§ 30:4–27.26, 30:4–27.28). Upon the filing of such a petition, the trial court conducts a temporary commitment hearing where that court examines the supporting certificates and must determine if probable cause exists to believe that the committee qualifies as a sexually violent predator under the act. *Id.* If the court finds probable cause, it issues a temporary commitment order pending a final hearing, which is normally scheduled within twenty days of the initial hearing. *Id.*; N.J. Stat. Ann. §§ 30:4–27.28(f), 30:4–27.29(a).

In advance of the final hearing, the committee is provided with copies of the clinical certificates and their supporting documents, the temporary commitment order, and a statement of the committee's rights at the final hearing. N.J. Stat. Ann. § 30:4–27.30(a). Those rights include the right to counsel and the appointment of counsel if the committee is indigent, the right to be present during the final hearing absent prior conduct which would prevent the court from reasonably conducting the hearing in the committee's presence, the right to present evidence, the right to cross-examine witnesses, and the right to a hearing in camera. *See Greenfield*, 2011 WL 3203730 at *6 (citing N.J. Stat. Ann. § 30:4–27.31). Following the appointment of counsel where necessary, the final hearing is conducted. *Id.* At that hearing, the trial court hears evidence, including expert testimony from psychiatrists and members of the treatment team who have treated the committee during his temporary commitment who have within the last five days prior to the hearing conducted a personal examination of the committee. *Id.* If the court, following the hearing, concludes by clear and convincing evidence that the committee qualifies as an SVP, the court issues an order involuntarily committing the SVP to the STU. *Id.* The SVP may thereafter appeal the court's order or petition for discharge from the STU at any time, and by statute will receive annual review hearings at which the state is again required to prove by clear and convincing evidence that commitment as the SVP is warranted. *Id.* (citing N.J. Stat. Ann. §§ 30:4–27.35, 30:4–27.36). Although an individual's commitment as an SVP often follows the end of a criminal sentence, such commitment is civil, and not criminal in nature. *See Aruanno v. Hayman*, 384 F. App'x. 144, 150 (3d Cir.); *cert. denied*, 562 U.S. 1115 (2010); *see also Ortiz v. Yates*, 2018 WL 1773543, at *4 (D.N.J. Apr. 12, 2018)(explaining same).

### b. Petitioner's Claims for Relief

#### i. Issues Raised to the Appellate Division on Appeal (Grounds One, Three & Four)

In Grounds One, Three and Four of the Petition, Petitioner raises the issues he raised on appeal to the Appellate Division. On appeal, Petitioner argued "that the court lacked jurisdiction to order his commitment, the State failed to sustain its burden of proof, he was denied a timely hearing, and he should have been assigned new counsel." *R.T.*, 2016 WL 674215, at *1, 4-7. The Appellate Division rejected these arguments and affirmed Petitioner's civil commitment. *Id.* For the reasons explained below, the Court finds that the Appellate Division did not unreasonably apply clearly established federal law in rejecting Petitioner's claims for relief, and will deny habeas relief on Grounds One, Three, and Four.

Petitioner has a lengthy sexual and non-sexual criminal history in several states, which is recounted in detail in the Appellate Division opinion denying his appeal of his commitment order. *See id.* at *1-2. The Court summarizes the relevant history below.

At age sixteen, R.T. was charged in Philadelphia with rape and carrying a concealed weapon. He was placed in a juvenile diagnostic center and later on probation. (Exhibit N, at N157, N176.)

In December 1983, at age twenty-eight, R.T. was arrested in Alameda, California, and charged with assault to commit rape, battery with serious bodily injury, and possession of a controlled dangerous substance. (Exhibit N, at N054, N157, N176.) The charges were dismissed. (*Id.* at N054.)

In January 1984, R.T. was arrested in San Francisco and charged with committing lewd acts with a child under age fourteen, oral copulation, false imprisonment, and rape by force. (Exhibit N, at N054, N157, N176.) Ultimately, the charges were downgraded to battery, and

defendant received a ninety-day suspended sentence and was placed on probation for eighteen months. (*Id.*)

Defendant was arrested again in San Francisco in July 1984. Following a jury trial, defendant was convicted of two counts of rape, oral copulation, assault with a deadly weapon, false imprisonment, and two counts of genital penetration by a foreign object. (Exhibit N, at N054-55, N157, N176.) He was sentenced to a six-year term of imprisonment. (*Id.*)

Defendant was incarcerated in California from 1984 until 1993. During that period, he accrued ten disciplinary infractions. Following his release, R.T. incurred a series of parole violations and new charges. As a result, R.T. was intermittently incarcerated at various times between 1994 and 1998. *See R.T.*, 2016 WL 674215, at *2.

Notably, after R.T. absconded in May 1997, he was arrested for car theft in New Jersey in August 1997. (Exhibit N, at N044, N046.) He was then returned to California where he remained in custody until he "maxed out" in February 1998. (Exhibit N, at N051.)

In May 1999, R.T. was again charged in San Francisco with seven counts of annoying and molesting a child, stalking, and threatening. (Exhibit N at N055, N158, N177-78.) R.T. was arrested for drug sales in January 2000. The next month he was charged with failing to register as a sex offender. He again failed to register as a sex offender in Las Vegas in February 2002, and in March he was charged as a fugitive from justice. *R.T.*, 2016 WL 674215, at *2.

R.T. resurfaced in Philadelphia where, in May 2004, he was arrested and charged with rape, assault, unlawful restraint, reckless endangerment, false imprisonment, sexual assault, and indecent exposure. R.T. denied the charges, all of which were withdrawn. (Exhibit N at 056, N159-160, N179.)

8

On March 7, 2005, R.T was again arrested in Philadelphia and charged with rape, aggravated assault, and various related offenses. (Exhibit N, at N057-58, N067.) On January 4, 2008, he was convicted of aggravated assault and sexual assault, and sentenced to a twenty-three month prison term. He was also placed on probation for eight years, and mandatory supervision and sex offender treatment for life, subject to Pennsylvania's Megan's Law. (Exhibit N, at N057-58, N067, N064-66.)

After completing the custodial portion of the Pennsylvania sentence for aggravated assault and sexual assault, R.T. was extradited to New Jersey on outstanding 1997 charges that included theft, receiving stolen property, and eluding a police officer. (Exhibit F at 5:9-13.) R.T. pled guilty to third-degree theft, and on June 20, 2008, was sentenced to a four-year prison term. (*Id.*)

At the time of his arrest in 1997, R.T. was a resident of New Jersey, reporting his address in Pleasantville. Records produced at his commitment hearing showed that R.T. also had a valid New Jersey driver's license between 1982 and 2001. (*See* Exhibit F, at 6:2-14; Exhibit N at N193.) When interviewed at South Woods State Prison, R.T stated that he planned to live with his sister in Egg Harbor Township, New Jersey. *See R.T.*, 2016 WL 674215 at *5.

On May 3, 2010, the State filed a petition for civil commitment pursuant to the SVPA, supported by clinical certificates of two psychiatrists identifying R.T. as a sexually violent predator. (Exhibit A; Exhibit N, at N005-14.) Because the theft conviction is not an enumerated offense under N.J.S.A. 30:4-17.26(a), the State relied upon the 2008 Pennsylvania conviction for Involuntary Deviant Sexual Intercourse – Forcible Compulsion, in violation of Pennsylvania law. The State also relied upon the 1985 California conviction for Rape by Means of Force or Fear, Oral Copulation by Force or Fear and Anal or Genital Penetration by Foreign Object. (*See*

Exhibit M at 12.) On May 10, the trial court entered an order temporarily committing R.T., and scheduled a date for the final hearing. (Exhibit B; Exhibit N, at N015-18.)

On June 21, 2010, represented by counsel from the Office of the Public Advocate, R.T. moved to dismiss the State's petition for lack of jurisdiction. R.T. argued that he was a Pennsylvania resident, had never been charged with or convicted of any sexual offense in New Jersey, and that he should be returned to Pennsylvania, where he would be required to complete his probationary sentence, register as a sex offender, and participate in outpatient sex offender treatment. (Exhibit N, Jun. 21, 2010 Motion.) Judge John McLaughlin denied the motion on October 8, 2010.[7] (*See* Exhibit E.)

The final hearing on the State's petition was adjourned while R.T. pursued his appeals and a post-conviction relief (PCR) application. (*See* Exhibit N, at 22-39; Exhibit K, at 7:12-20, 8:3-6; Exhibit F; Exhibit G.) On June 8, 2012, the court granted R.T.'s request to again adjourn the final hearing so that he could engage an expert. *See R.T.*, 2016 WL 674215, at * 2. At a December 12, 2012 hearing, R.T. advised the court that he did not wish to proceed with the hearing because his PCR application was pending before the Appellate Division. He had also filed an ethics complaint against his public defender, and expressed his intention to retain private counsel. *See id.*

The court held a final hearing on December 18, 2013. (Exhibit I.) R.T. appeared, represented by newly assigned counsel, and R.T. argued that he should have counsel other than the assigned Deputy Public Defender because he had a lawsuit pending against the Office of the Public Defender. (Exhibit I, at 8:9-9:16.) The State relied on expert reports and testimony from

---

[7] R.T. apparently moved for leave to appeal, which was denied on January 5, 2011. R.T. then sought leave to appeal to the Supreme Court, which denied the motion on April 7, 2011. *See R.T.*, 2016 WL 674215, at * 2. *See R.T.*, 2016 WL 674215, at *2.

DeCrisce and Paolillo. R.T. also testified but did not present an expert. (Exhibit I.) Following the close of evidence, Judge Philip Freedman issued an oral decision committing R.T. to the STU. (*Id.*)

Both State experts testified that Tinsley refused to be interviewed by them, and that they had to formulate opinions based upon their review of the pertinent records. (Exhibit I, at 17:25-18:21, 19:18-20, 117-22 to 118-4, 118:14). The experts explained their review of the documentation and Tinsley's history, and they testified that to a reasonable degree of medical certainty, Tinsley was highly likely to sexually reoffend if released into the community. (Exhibit I, at 85:11-15, 154:10).

The uncontested testimony of both State experts found that Tinsley suffered from Antisocial Personality Disorder. (Exhibit N, at N169, N189; Exhibit I, at 82:12-23, 151:18-153:4). Both found that the Antisocial Personality Disorder manifests itself sexually and is linked to his sexual offending. (Exhibit I, at 83:13-16; Exhibit N, at N170). Dr. Paolillo diagnosed Tinsley as suffering from Paraphilia to nonconsensual sex. (Exhibit N, at N169, N189). Both doctors diagnosed Tinsley as suffering from Polysubstance Dependence, which Dr. DeCrisce identified as elevating Tinsley's risk to recidivate. (Exhibit I, at 83:25-84:1.)

Furthermore, Dr. DeCrisce testified that Tinsley's personality disorder is particularly severe and requires "substantial intensive treatment in a facility" like the STU. (Exhibit I, at 83:17-24.) Dr. Paolillo similarly testified that, because Tinsley has a particularly high need for treatment and has refused any treatment to date, "he doesn't have any skills to function safely in the community and avoid committing another sexual offense." (Exhibit I, at 159:10- 12.) Furthermore, both experts found that R.T. remains at a high risk to recidivate. (Exhibit I, at 80:20-23, 146:1-3; Exhibit N, at N165-66, N188.)

Finally, Dr. DeCrisce testified that, although age is generally a mitigating factor for sex offenders, Tinsley's age does not mitigate his risk. (Exhibit I, at 85:25-86:9). Dr. DeCrisce explained that Tinsley's "justification, blame for [his] situation, deflecting responsibility from himself on to what he perceives to be a corrupt society rather than looking at his part in these various behaviors that he's expressed throughout his life" present "clear evidence of that personality structure continuing to be present," despite his age. (Exhibit I, at 114:25-115:6). Dr. Paolillo similarly testified that Tinsley's ongoing severe antisocial behavior indicates that he is "an atypical individual at his age." (Exhibit I, at 157:3).

R.T. also testified at the final hearing. On the stand, Tinsley disputed the accuracy of his criminal history and denied the validity of the sexual offense convictions, describing them as "false charge[s]." (Exhibit I, at 171:17-189:9- 24). The Assistant Deputy Public Defender appeared on R.T.'s behalf and conducted cross-examination of the State's expert witnesses, and Tinsley frequently spoke on his own behalf. In addition to raising objections to the proceedings, (Exhibit I, at 7:3-17:17), he presented documentary exhibits, (Exhibit I, at 94:17-95:25), and engaged in colloquy with the court. (Exhibit I, at 177:9-179:12.)

The judge found both Tinsley's testimony and the documents he submitted to be "incredible." (Exhibit K, at 42:24-26:2, 53:13- 14). In contrast, the judge found the State's expert opinions "clearly supported by the evidence" and that their testimonies were not contradicted. (Exhibit K, at 51:10-14). The judge found by clear and convincing evidence that Tinsley suffered from an Antisocial Personality Disorder, and a "paraphilic drive driving his offending." (Exhibit K, at 51:20-52:1). Judge Freedman found Tinsley was "affected in all three areas [emotionally, cognitively, and volitionally]", was "predisposed" to sexually violent behavior, and, if released, would have difficulty controlling his sexually violent behavior.

(Exhibit K, at 52:1-5).  On January 15, 2014, Judge Freedman ordered that Tinsley be civilly committed to the STU.  (Exhibit L.)

Petitioner appealed, and on February 19, 2016, the Appellate Division affirmed Tinsley's commitment in an unpublished decision.  (Exhibit II).  In reviewing Petitioner's claims, the Appellate Division set out the relevant facts, the standard for civil commitment proceedings, and the standard of appellate review:

> Under the SVPA, the State can involuntarily commit a sexually violent predator by civil proceeding. The State must show clear and convincing evidence that: (1) the defendant was convicted of a sexually violent offense; (2) the defendant suffers from a mental abnormality or personality disorder predisposing him or her to commit acts of sexual violence; and (3) the defendant has "serious difficulty in controlling his or her harmful behavior such that it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend." *In re Commitment of W.Z.*, 173 N.J. 109, 120–30 (2002).
>
> Review of a trial court's judgment in a civil commitment proceeding under the SVPA is "extremely narrow." *In re Commitment of J.P.*, 339 N.J. Super. 443, 459 (App. Div. 2001) (citing *State v. Fields*, 77 N.J. 282, 311 (1978)). We afford the utmost deference to the trial court's determination and make modifications only if there is a clear abuse of discretion. Ibid. "The appropriate inquiry is to canvass the ... expert testimony in the record and determine whether the [trial court's] findings were clearly erroneous." *In re D.C.*, 146 N .J. 31, 58–59 (1996). Thus, the trial court's findings should not be disturbed if they are supported by sufficient credible evidence in the record. *In re Civil Commitment of R.F.*, 217 N.J. 152, 175 (2014). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.' " *Id.* at 174 (quoting *In re Civil Commitment of T.J.N.*, 390 N.J. Super. 218, 226 (App. Div. 2007)).

R.T., 2016 WL 674215, at *4.

The appellate court first rejected Petitioner's argument that the decision to civilly commit Petitioner is against the weight of the evidence

> Guided by the[] standards [governing civil commitment and appellate review of civil commitment], we first reject R.T.'s

13

arguments that the judgment is against the weight of the evidence presented and that he does not currently suffer from a mental abnormality or personality disorder predisposing him to sexual violence. R.T. failed to rebut the State's evidence that he was convicted of several sexual offenses in Pennsylvania and California. His offered explanations regarding the circumstances of the offenses for which he was convicted, and why he actually pled guilty to the Philadelphia charges in 2005, despite his claimed innocence, are incongruous and even absurd. Despite the overwhelming evidence to the contrary, in his mind, the denial of culpability justifies his treatment refusal. To be sure, the evidence shows he is in need of treatment to address his sexually violent behavior, which must precede consideration of his release.

We conclude from our review of the record that the judge's findings are supported by substantial credible evidence. *State v. Locurto*, 157 N.J. 463, 470–71 (1999). From the unrefuted testimony of the State's two experts, it is clear that R.T. suffers from mental abnormalities that pose a serious risk that he will sexually reoffend if released. There was no expert support for R.T.'s argument on appeal that the risk he will reoffend is minimized by his present age or his prior treatment for colon cancer. We affirm substantially for the reasons stated by Judge Freedman in his oral opinion of January 15, 2014. We find no error in the judge's conclusions, which were fully supported by the record and consistent with the applicable law.

R.T., 2016 WL 674215, at *4–5.

The Appellate Division did not unreasonably apply clearly established federal law in rejecting Petitioner's sufficiency of the evidence claim, which he asserts in Grounds One, Three, and Four of the Petition. [8]

---

[8] As noted above, Grounds Three and Four appear to reassert the sufficiency of the evidence claim raised in Ground One and seek release and/or transfer to Pennsylvania as a remedy. The Court does not construe Petitioner to ask the Court to consider the expert report that was prepared in 2015 in assessing his sufficiency of the evidence claim. To the extent Petitioner is asking the Court to consider that expert report in determining the sufficiency of the evidence claim, the Court would decline to do so pursuant to *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Because the Appellate Division declined to expand the record to include the 2015 expert report, this Court may not consider it on habeas review.

"[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). In an involuntary commitment proceeding, an individual's interest in his or her liberty is balanced against well-recognized state interests. A state's legitimate interests and authority in this area arise from two sources: its police power to protect the community at large, and its parens patriae power to provide care to its citizens who are unable to care for themselves because of their emotional disorders. *Id.* at 426. Due to the significant restraint on the liberty of a committee, the commitment process is limited by constitutional procedural guarantees and the scope of commitment is limited. *In re Commitment of W.Z.*, 173 N.J. 109, 125–26 (N.J. 2002).

Petitioner's sufficiency of the evidence argument before the Appellate Division asserted that the state's experts failed to prove by clear and convincing evidence that R.T was subject to commitment as an SVP. More specifically, Petitioner's argued that the state did not establish by clear and convincing evidence that Petitioner suffered from a mental abnormality or personality disorder that makes it "difficult if not impossible for the person to control his dangerous behavior", as required by *Kansas v. Hendricks*, 521 U.S. 346, 357-58 (1997). This requirement was clarified by the Supreme Court of the United States in *Kansas v. Crane*, 534 U.S. 407 (2002), which described the requisite level of impairment as a "serious difficulty in controlling behavior."[9] The New Jersey Supreme Court, in turn, examined this requirement in *In the Matter of the Commitment of W.Z.*, 173 N.J. 109, 133-34 (2002), and held, consistent with *Crane*, that "the State must prove by clear and convincing evidence that the individual has serious difficulty

---

[9] As clarified by the Supreme Court in *Kansas v. Crane*, 534 U.S. at 412, *Hendricks* underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment "from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." 521 U.S., at 360.

controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend."

As summarized above and by the Appellate Division, the hearing record more than supports such a conclusion as to Petitioner. The State produced two expert witnesses, both of whom the hearing judge found very credible. Based on that testimony, the judge found by clear and convincing evidence that R.T. suffered from an Antisocial Personality Disorder, and a "paraphilic drive driving his offending." (Exhibit K, at 51:20-52:1). The judge further found Tinsley was "affected in all three areas [emotionally, cognitively, and volitionally]", was "predisposed" to sexually violent behavior, and, if released, would have difficulty in controlling his sexually violent behavior. (Exhibit K, at 52:1-5.) Finally, the judge found R.T.'s testimony incredible. The Appellate Division agreed with this assessment and rejected Petitioner's sufficiency of the evidence argument. *See R.T.*, 2016 WL 674215, at *4-5.

To the extent Petitioner asserts that the state court's conclusions rest on an unreasonable interpretation of the facts presented at his review hearing, *see* 28 U.S.C. § 2254(d)(2), Petitioner can only successfully rebut the presumption that the state court's factual conclusions were correct if he show those conclusions false by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has failed to present clear and convincing evidence, to rebut the judge's factual findings as to the credibility of the experts; nor has he shown that the hearing judge's findings were an unreasonable application of the uncontroverted expert testimony presented at Petitioner's initial commitment hearing. As such, the Court denies relief on the sufficiency of the evidence claim in Ground One.

Nor did the Appellate Division unreasonably apply clearly established federal law when it rejected Petitioner's argument that New Jersey lacked jurisdiction to civilly commit him and that his civil commitment violates the Full Faith and Credit Clause as follows:

> R.T. also renews his argument that New Jersey lacks jurisdiction to civilly commit him because he is a Pennsylvania resident who has not committed a sex offense in New Jersey and poses no danger to New Jersey citizens upon his release. We conclude that this argument lacks merit.
>
> The SVPA "applies whether the offense was committed in New Jersey ... or another State." *In re Commitment of P.Z.H.*, 377 N.J. Super. 458, 463–64 (App. Div. 2005). Moreover, in denying R.T.'s motion to dismiss, Judge McLaughlin determined that in light of R.T.'s mobility and contacts with New Jersey, his commitment would protect New Jersey residents from his potentially sexually violent behavior.
>
> When arrested in 1997, R.T. told police that he was a resident of Pleasantville, New Jersey. Records produced at the hearing established that R.T. maintained a New Jersey driver's license from 1982 to 2001. While R.T. argues that he will reside in Philadelphia upon his release, in his January 15, 2014 decision, Judge Freedman noted that when interviewed by Dr. Schullery at South Woods State Prison R.T. instead stated that he planned to live with his sister in Egg Harbor Township. Accordingly, we reject R.T's argument that he lacks sufficient contacts to New Jersey so that New Jersey exceeded its "parens patriae jurisdiction" to protect its citizens from harm by subjecting him to civil commitment proceedings in this State.
>
> R.T. further argues that New Jersey was required to give full faith and credit to the Pennsylvania judgment placing him on probation and mandating that he receive outpatient treatment. The Full Faith and Credit Clause provides that, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art IV, § 1.
>
> Importantly, the Clause does not require "a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 632, 83 L. Ed. 940, 944 (1939). Nor does it require "a State to apply another State's law in violation of its own legitimate public policy." *Nevada v. Hall*, 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L. Ed.2d 416, 426 (1979). "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must

have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 640, 66 L. Ed.2d 521, 531 (1981).

Here, the State's decision to civilly commit R.T. is based on its own legitimate public policy. Our Supreme Court has repeatedly emphasized that the Legislature's goal for the SVPA was to create a civil, not penal, regulatory scheme. *See In re Civil Commitment of W.X.C.*, 204 N.J. 179, 188 (2010), *cert. denied*, 562 U.S. 1297, 131 S.Ct. 1702, 179 L. Ed.2d 635 (2011); *In re Civil Commitment of J.M.B.*, 197 N.J. 563, 599, *cert. denied*, 558 U.S. 999, 130 S.Ct. 509, 175 L. Ed.2d 361 (2009); *State v. Bellamy*, 178 N.J. 127, 137–38 (2003). Its purposes are regulatory, because "the statute is designed to protect the public from dangerous predators and to treat sex offenders who are, by definition, suffering from a mental abnormality." *See W.X.C., supra*, 204 N.J. at 188. Those are legitimate legislative goals, which protect the community and also provide care to its citizens who are in need of treatment and who are unable to secure it for themselves. *See W.Z., supra*, 173 N.J. at 125. Consequently, we perceive no full faith and credit violation. Upon completion of his treatment in New Jersey, R.T. shall be free to return to Pennsylvania to fulfill its probationary requirements.

R.T., 2016 WL 674215, at *5–6.

In state court, Petitioner argued that he had insufficient contacts with the State of New Jersey, and it was unconstitutional for New Jersey to apply the SVPA to him. In deciding constitutional choice–of–law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, the Supreme Court traditionally examines the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation. In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, the Court has invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). It a State has only an

insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional. *Id.*

The Full Faith and Credit Clause to the United States Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1. The Full Faith and Credit Clause generally requires each state to recognize and enforce valid judgments rendered by the courts of other states. As the Supreme Court has explained,

> [t]he very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

*Milwaukee County. v. M.E. White Co.*, 296 U.S. 268, 276-77 (1935).

Here, the Court finds that the Appellate Division did not unreasonably apply clearly established federal law in rejecting Petitioner's argument that he lacked significant contacts with New Jersey given his New Jersey arrest, conviction, and four-year incarceration in New Jersey, his prior residence in the state, and conflicting information about where he planned to reside upon release from prison. Nor did the Appellate Division unreasonably apply clearly established federal law in relying on Supreme Court precedent that a state need not apply another state's law in violation of its own legitimate public policy.

Notably, in *Rosin v. Monken* (7th Cir. 2010) 599 F.3d 574, the Seventh Circuit rejected a similar argument from a defendant who committed a sex offense in New York and claimed he was not subject to Illinois's sex offender registration law. The defendant argued that the New

York court had ordered that he was not required to register as a sex offender, and, consequently, it would violate full faith and credit for Illinois to apply its registration law to him. The Seventh Circuit disagreed. "Illinois need not dispense with its preferred mechanism for protecting its citizenry by virtue merely of a foreign judgment that envisioned less restrictive requirements[ ] being imposed on the relevant sex offender." *Id.* at 577. "[T]he New York court in the present case 'cannot command obedience elsewhere on a matter the [New York] court lacks authority to resolve. New York has no authority to dictate to Illinois the manner in which it can best protect its citizenry from those convicted of sex offenses." *Id.*

In sum, Court finds that the Appellate Division did not unreasonably apply clearly established federal law and denies relief on Petitioner's claims that New Jersey lacked jurisdiction to commit him under the SVPA and that his commitment in New Jersey violated the Full Faith and Credit Clause, as asserted in Ground One.

With respect to the remaining issues asserted in Ground One, the Appellate Division determined that Petitioner's remaining arguments were without sufficient merit to warrant extended discussion, pursuant to N.J. Ct. R. 2:11-3(e)(1)(E). The court nevertheless provided the following analysis of Petitioner's claims regarding (1) the denial of a final commitment hearing within 20 days of the temporary commitment order, and (2) the failure to appoint new counsel in light of the lawsuits he filed against the Office of the Public Defender:

> R.T. contends that he was denied his right to a commitment hearing within twenty days of the filing of the temporary commitment order in violation of N.J.S.A. 30:4–27.29(a) and his right to due process. However, the record reflects that all delays were caused by R.T.'s desire to await the outcome of his appeals challenging the court's jurisdiction and his PCR proceedings, as well as his apparently unsuccessful efforts to retain new counsel and an expert to support his position.
>
> Judge Freedman also expressly found that R.T. "filed lawsuits against the [c]ourt, his [ ] doctors, his lawyer, and any number of

other people in an attempt to avoid this hearing." Consequently, he cannot now be permitted to claim that his lawsuit against the Office of the Public Defender (and others) created a conflict of interest that should have resulted in the assignment of new counsel to represent him.

Moreover, after R.T. filed an ethics complaint against the public defender who represented him at the December 12, 2012 hearing, that public defender withdrew from the case. The memorializing order recites that R.T. "represented that he intends to retain private counsel." R.T. failed to do so, requiring that new counsel be appointed to represent him at the final hearing. We further note that a defendant is not entitled, carte blanche, to his choice of attorney if he elects to have the Office of the Public Defender represent him at the taxpayers' expense. *State v. Coon*, 314 N.J. Super. 426, 438 (App. Div.), *certif. denied*, 157 N.J. 543 (1998). "The right to assigned counsel is not the right to pick an attorney of one's own choosing, nor the right to select counsel who will completely satisfy a defendant's fancy as to how he is to be represented." *Ibid.*

Here, the record shows that R.T. was adequately represented at the final hearing by competent counsel who actively cross-examined the expert witnesses and raised objections throughout the hearing. Prior counsel also moved to dismiss the State's petition and sought interlocutory review when that relief was denied. Accordingly, we discern no basis to disturb the trial court's judgment.

R.T., 2016 WL 674215, at *6-7.

Here, the Appellate Division did not unreasonably apply any clearly established federal law regarding the delays in his final commitment hearing and based its determination on the hearing judge's factual findings that the delays were attributable to Petitioner. Such findings are adequately supported by the record and Petitioner has not rebutted these finding by clear and convincing evidence. Indeed, the record shows that any delay in Petitioner's final hearing was of his own making. N.J.S.A. 30:4-27.29(a) provides that a person civilly committed under the New Jersey SVPA "shall receive a court hearing with respect to the issue of continuing need for involuntary commitment as a sexually violent predator within 20 days from the date of the temporary commitment order." Petitioner was temporarily committed to the STU on May 10, 2010. (Exhibit B). The date of the final hearing was initially scheduled for May 28, 2010, but

was pushed back to allow Petitioner to pursue various motions, appeals, and petition for post-conviction relief and allow him to secure an expert to testify on his behalf. (Exhibit E; Exhibit K, at 7:12-20, 8:3-6; Exhibit I; Exhibit F; Exhibit N, at N038-39). As the Appellate Division explained, Petitioner's repeated requests to delay his own hearing cannot now be used to render the entire proceeding deficient.

Nor did the Appellate Division unreasonably apply clearly established federal law in rejecting Petitioner's claim that the hearing judge erred in denying him new counsel under the circumstances presented. Citing generally to *Vivek v. Jones*, 445 U.S. 480, 491 (1980) and *Jones v. United States*, 463 U.S. 354 (1983), Petitioner argued on appeal that he has a due process right to be represented by counsel in his commitment hearing, and that his counsel was operating under a conflict of interest under the Rules of Professional Conduct, N.J. Ct. R. Prof. Conduct, due to Petitioner's then-pending civil lawsuit against the Office of the Public Defender. After Petitioner filed an ethics complaint against his counsel, he was assigned new counsel from the Office of the Public Defender for his final hearing, and there is no clearly established federal law requiring counsel of Petitioner's choosing in this situation.

The SVPA requires that people subject to civil commitment proceedings must be represented by counsel at their hearings. *See* N.J.S.A. 30:4–27.29(c); *Aruanno v. Yates*, 2016 WL 4951047, at *11 (D.N.J., 2016). To the extent Petitioner asserts that he received ineffective assistance of counsel, this Court assumes without deciding that an indigent person has a due process right to the appointment of counsel in a civil commitment proceeding to determine if he is a sexually violent predator, and that the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), governs such an ineffective assistance of counsel claim. *See, e.g., Greenfield v. Dep't of Corr.*, 2011 WL 3203730 at *7-9 (D.N.J. July 27, 2011) (the Sixth

Amendment does not apply to civil commitment hearings, but the Due Process Clause of the Fourteenth Amendment may entitle a civil committee subject to the SVPA to effective counsel); *Aruanno v. Yates*, 2016 WL 4951047, at *8 (D.N.J. Sept. 14, 2016) (same). To the extent Petitioner asserts ineffective assistance of counsel at his commitment hearing, that claim fails because he has failed to show that he suffered any prejudice, i.e., that there is reasonable probability that the outcome would have been different had he been assigned new counsel.[10]

### ii. Improper Denial of Motion to Supplement the Record (Ground Two)

Ground Two of the Petition asserts that the Appellate Division and New Jersey Supreme Court improperly denied Petitioner's motion to supplement the record with an expert report. On October 8, 2015, while his appeal was pending, R.T. filed a motion under N.J. Ct. R. 2:5-5, to supplement the appellate record with an expert report dated September 9, 2015, which was prepared in advance of his upcoming review hearing. Petitioner moved before the Appellate Division to supplement the records for both his direct appeal, and for a related case he brought against the various defendants including the Office of Public Defender. (Exhibits W, X.) The motion was denied by the Appellate Division on November 25, 2015. (Exhibit BB.) On

---

[10] Under *Strickland*, a claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.* To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. A court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

December 10, 2015 -- before the Appellate Division had rendered a substantive decision -- Petitioner filed with the Supreme Court of New Jersey a petition for certification, a motion for leave to file an interlocutory appeal of the denial of his motions, and for remand with the New Jersey Supreme Court on December 10, 2015. (Exhibit DD.)

On December 21, 2015, a representative from the New Jersey Supreme Court sent Tinsley a letter informing him that the Appellate Division's order denying his motion to supplement the record did not finally decide the case. (Exhibit FF). On December 28, 2015, Tinsley filed with the Supreme Court a motion to expand the record and for a remand with a supporting certification. (Exhibit GG). On February 19, 2016, the Appellate Division issued its substantive decision. (Exhibit II.) On February 26, 2016, the Supreme Court dismissed the motion for leave to appeal and remand, in light of the fact that the Appellate Division had issued a final decision and the matter was no longer interlocutory, and informed Petitioner that he could appeal all orders in connection with the Appellate Division's decision through a petition for certification. (Exhibit KK.) On June 14, 2016, the Supreme Court of New Jersey denied Petitioner's petition for certification.[11] (Exhibit LL.)

Petitioner is not entitled to relief on Ground Two. The Supreme Court has established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Indeed, claims based on errors of state law are not cognizable on federal

---

[11] Respondents apparently have no record of Petitioner's filing of a new petition for certification. In light of the separate Order denying the petition for certification (Exhibit LL), it appears to the Court that Petitioner either submitted a new petition for certification or the Supreme Court of New Jersey construed his earlier submission as a pending petition for certification. To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them as meritless under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007). To the extent Ground Two is unexhausted because it was not raised in a new petition for certification, the Court denies it as meritless and based entirely on state law.

habeas review, and federal courts cannot re-examine state court determinations of state law issues. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[s]tate courts are the ultimate expositors of state law"); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that claims based on errors of state law are not cognizable on habeas review).

Under New Jersey law, appellate courts will not ordinarily consider evidentiary material that is not in the record below. *Cipala v. Lincoln Technical Inst.*, 179 N.J. 45, 52 (2004); *Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A.*, 189 N.J. 436, 452 (2007). An appellate court nevertheless has the inherent power to address such a motion. *See* N.J. Ct. R. 2:9–1(a) ("The appellate court may at any time entertain a motion for directions to the court or courts or agencies below or to modify or vacate any order made by such courts or agencies or by any judge below."); *see also, Musto v. Vidas*, 333 N.J. Super. 52, 67 (App. Div.) (remanded to trial court to consider motion to supplement while appeal was pending), *certif. denied*, 165 N.J. 607 (2000). "Factors to be considered on a motion to supplement include (1) whether at the time of the hearing or trial, the applicant knew of the information he or she now seeks to include in the record, and (2) if the evidence were included, whether it is likely to affect the outcome." *Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso*, P.A., 916 A.2d 440, 449, 189 N.J. 436, 452–53 (N.J.,2007). Leave to file a petition for certification to the New Jersey Supreme Court of an interlocutory order of the Appellate Division will only be granted "when necessary to prevent irreparable injury." N.J. Ct. R. 2:2-2(b). Generally, when leave is granted, it is because there is the possibility of "some grave damage or injustice" resulting from the trial court's order. *Brundage v. Estate of Carambio*, 195 N.J. 575, 599 (2008).

Here, the Appellate Division denied leave to supplement the record to include an expert report that was prepared approximately 21 months after the commitment hearing at issue in the

appeal, presumably finding that it would not affect the outcome of the appeal. The Supreme Court denied Petitioner's interlocutory appeal after the Appellate Division rendered its substantive decision and subsequently denied certification. Neither state court unreasonably applied any clearly established <u>federal law</u> in denying Petitioner's appeals and instead applied well-settled state law in reaching these decisions. As such, Petitioner is not entitled to relief on Ground Two.

### c. Petitioner's Letters to the Court Seeking Removal of Counsel

Petitioner recently requested to remove his counsel and proceed pro se in this matter. On November 30, 2018, after briefing in this matter was complete, Charles Harry Landesman, Esquire, entered an appearance on behalf of Petitioner. On January 9, 2019, Mr. Landesman submitted a letter to the Court requesting a status update. (ECF Nos. 29-30.) On February 27, 2019, Petitioner wrote to the Court asking to have Mr. Landesman removed as counsel, as he wishes to proceed pro se in this matter. (ECF No. 31.)

The Court will deny Petitioner's request to remove his counsel. Pursuant to L. Civ. R. 102.1, unless other counsel is substituted, withdrawal of counsel requires leave of court. In deciding whether to permit an attorney to withdraw the court should consider: (1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case. *Rusinow v. Kamara*, 920 F. Supp. 69, 71 (D.N.J. 1996). Here, the request to remove counsel was submitted by Petitioner, and his counsel has not submitted a request to withdraw or addressed the factors listed above, namely the reason for the

26

withdrawal. For these reasons, the Court will deny Petitioner's request to remove Mr. Landesman as counsel.[12]

### d. Certificate of Appealability

The Court will also deny a certificate of appealability. Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

## V.     CONCLUSION

For the reasons explained in this Opinion, the Court will deny the Petition and deny a certificate of appealability. The Court also denies Petitioner's letter request to remove his counsel. An appropriate Order follows.

_Madeline Cox Arleo_

Madeline Cox Arleo, District Judge
United States District Court

DATED: _July 30 - 19_

---

[12] The Court notes that counsel entered an appearance after briefing was complete, and did not request to submit supplemental briefing. Therefore, Petitioner has essentially litigated this matter pro se, which appears to be his primary concern.